NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DIRECTV INC., | : |
| Plaintiff, | : |
| v. | Civ. Action No. 03-2384 (JAG) |
| MICHAEL CIGNARELLA, et al., | OPINION |
| Defendants. | : |

**GREENAWAY, JR., U.S.D.J.**

### INTRODUCTION

This matter comes before the Court on the motion of defendant, Michael Cignarella ("Defendant" or "Cignarella"), to dismiss the third count of plaintiff DIRECTV, Inc.'s ("Plaintiff" or "DIRECTV") complaint, pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

DIRECTV filed a complaint against Cignarella and various other individuals[1] claiming that the individual defendants possessed and used devices allegedly designed to permit the viewing of DIRECTV's programming without authorization and payment to DIRECTV, in violation of the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Electronic

---

[1] None of the other individual defendants are participating in the motion to dismiss sub judice.

Communications Privacy Act ("ECPA") 18 U.S.C. §§ 2510-2521 (2004).  Specifically, the complaint includes three claims: the first alleging a violation of 47 U.S.C. § 605(a)[2] (unauthorized reception of satellite signals); the second alleging a violation of 18 U.S.C. § 2511(1)(a)[3] (unauthorized interception of electronic communications); and the third alleging a violation of 18 U.S.C. § 2512(1)(b)[4] (possession of pirate access devices).

Cignarella has moved to dismiss the third claim of the complaint, arguing that no private cause of action exists for a violation of 18 U.S.C. § 2512(1)(b), while DIRECTV maintains that 18 U.S.C. § 2520(a) creates a private civil cause of action for a violation of 18 U.S.C.

---

[2] 47 U.S.C. § 605(a) is not the subject of the present motion to dismiss.

[3] 18 U.S.C. § 2511(1)(a) provides

> Except as otherwise specifically provided in this chapter any person who –
>
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
> . . .
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

[4] 18 U.S.C. § 2512(1)(b) states

> Except as otherwise specifically provided in this chapter, any person who intentionally –
> . . .
> (b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce;
> . . .
> shall be fined under this title or imprisoned not more than five years, or both.

2

§ 2512(1)(b). The Third Circuit has not spoken on this issue, and the persuasive authority, both within and outside this district, is split. For the reasons stated herein, this Court finds that a private cause of action does not exist under 18 U.S.C. § 2512(1)(b) and will thus grant Defendant's motion to dismiss.

**BACKGROUND**

DIRECTV, a California company, is a direct broadcast satellite system provider that delivers television programming to its customers throughout the United States. Its programming is broadcast in an electronically scrambled format and is intended to be unscrambled only by its paying customers. DIRECTV scrambles its signal to provide security for, and to prevent the unauthorized viewing of, its programming. Only in those places where a subscription or a pay-per-view right has been purchased is programming permitted to be viewed. Each subscribing customer is required to obtain a DIRECTV access card that unscrambles the DIRECTV encryption codes and other system hardware, such as a satellite dish, in order to view the paid-for programming.

Defendant Michael Cignarella is a resident of Cedar Grove, New Jersey. DIRECTV alleges that Cignarella, through interstate or foreign commerce, purchased a printed circuit board device called an unlooper, which is a type of pirate access device, and had it delivered to his home in Cedar Grove via the Postal Service or other common carrier. Pirate access devices are allegedly designed to permit the unauthorized viewing of DIRECTV's programming by unscrambling the encrypted DIRECTV programming in a manner similar to the access cards provided by DIRECTV to its customers.

Cignarella seeks to dismiss the third claim of the complaint (possession of pirate access

devices in violation of 18 U.S.C. § 2512(1)(b)), arguing that § 2512 is a criminal statute under which there is no civil liability; that the statute that does provide for civil liability, 18 U.S.C. § 2520(a), does not incorporate by reference or specifically mention § 2512; and that, as a result, there is no basis for Plaintiff's civil action against Defendant for damages under § 2512.

**DISCUSSION**

**A. Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)**

"A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief." Oatway v. American International Group, Inc., 325 F.3d 184 (3d Cir. 2003); In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1420 (3d Cir. 1997). A court should not dismiss a complaint under Rule 12(b)(6) for failure to state a claim for relief "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'" Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (quoting Conely v. Gibson, 355 U.S. 41, 45-46 (1957)). "In evaluating whether dismissal is proper, a court must accept all the factual allegations of the complaint . . . as true, and must draw all reasonable inferences . . . to aid the pleader." Id.; D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984). Though a court must take as true all the facts alleged, it may not "assume that the [plaintiff] can prove any fact that it has not alleged." Associated Gen. Contractors of Calif. Inc., v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).

**B. Statutory framework**

The crux of the problem presented to this Court is the question of whether 18 U.S.C.

§ 2520(a)[5] creates a civil cause of action for violations of 18 U.S.C. § 2512(1)(b).  In the third claim of the complaint, DIRECTV alleges that Cignarella "possessed and used Pirate Access Devices, knowing or having reason to know that the design of such devices render them primarily useful for the purpose of surreptitious interception of DIRECTV's satellite transmissions of television programming, and that such devices, or any components thereof, have been or will be sent through the mail or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2512(1)(b)."  (Compl. at ¶ 29.)

According to Cignarella's interpretation,[6] § 2520 only confers a civil right of action in situations where 18 U.S.C. § 2511[7] has been violated.  That is, the phrase "that violation" refers only to violations of the chapter involving the interception, disclosure or intentional use of wire, oral or electronic communications, rather than any violation of the chapter.  Thus, Cignarella argues that DIRECTV's complaint does not set forth a proper claim upon which relief can be granted since § 2520 does not provide relief for the manufacture or possession of a pirate access

---

[5] 18 U.S.C. § 2520(a) provides that

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

[6] Many courts have agreed with Cignarella's interpretation of § 2520.  See, e.g., DirecTV, Inc. v. Barker, No. Civ. A. 04-1938, 2004 WL 1729484, at *1 (E.D. Pa. Jul. 28, 2004); DirecTV, Inc. v. Jerolleman, No. Civ. A. 03-1465, 2003 WL 22697177, at *1 (E.D. La. Nov. 12, 2003); DirecTV, Inc. v. Hosey, 289 F. Supp. 2d 1259, 1264 (D. Kan. 2003); DirecTV, Inc. v. Childers, 274 F. Supp. 2d 1287, 1288-89 (M.D. Ala. 2003); DirecTV, Inc. v. Amato, 269 F. Supp. 2d 688 (E.D. Va. 2003).

[7] 18 U.S.C. § 2511 focuses on the interception and disclosure of wire, oral or electronic communications.

device.

DIRECTV reads § 2520 more broadly, to confer the right to a civil cause of action for violation of any part of the chapter, other than § 2511(2)(a)(ii) which is explicitly exempted.[8] That is, DIRECTV argues that the "intercepted, disclosed, or intentionally used" language defines and describes the class of persons who have been wronged, rather than the wrong itself. As to the wrong itself, "that violation" refers to a "violation of this chapter," which includes manufacturing, assembling, possessing, or selling devices that can be used to intercept wire, oral or electronic communications, as provided in 18 U.S.C. § 2512(1)(b), as well as the interception, disclosure or intentional use of wire, oral or electronic communications, as provided in 18 U.S.C. § 2511(1)(a).

This Court concludes that the plain language of the statute does not extend civil liability to one who possesses a pirate access device in violation of § 2512(1)(b). Further, the legislative history of the ECPA leads this Court to the same conclusion.

**1.      The Plain Language of 18 U.S.C. § 2520**

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985). "Going behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be

---

[8] Numerous courts have concluded that § 2520(a) creates a civil cause of action for a violation of § 2512(1)(b). See, e.g., DirecTV, Inc. v. Moreno, No. 03-2478, 2003 WL 22927883, at *4 (D.N.J. Dec. 11, 2003); DirecTV, Inc. v. Perez, 279 F. Supp. 2d 962, 964 (N.D. Ill. 2003); DirecTV, Inc. v. EQ Stuff, Inc., 207 F. Supp. 2d 1077, 1084 (C.D. Cal. 2002); Oceanic Cablevision, Inc. v. M.D. Electronics, 771 F. Supp. 1019, 1029 (D. Neb. 1991).

taken cautiously' even under the best of circumstances." American Tobacco Co. v. Patterson, 456 U.S. 63, 75 (1982) (quoting Piper v. Chris-Craft Indus., Inc., 430 U.S. 1, 26 (1977)).

A plain reading of the statute leads this Court to believe that Congress intended the phrase "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" to confer standing on plaintiffs "to recover [civil damages] from the person or entity . . . which engaged in that violation." The second phrase – "the person or entity . . . which engaged in that violation" – defines the class of defendants, as well as the wrong for which the defendants can be held civilly liable. That is, in order to be civilly liable, a defendant must have intercepted, disclosed or intentionally used a plaintiff's wire, oral or electronic communications. In addition, the phrase "that violation" limits the class of offenses for which a defendant can be liable. "As a matter of grammar and sentence structure, the phrase 'that violation' must refer to the interception, disclosure, or intentional use of a communication in violation of this chapter referred to earlier in the sentence." DIRECTV, Inc. v. Beecher, 296 F. Supp. 2d 937, 941 (S.D. Ind. 2003). Basically, § 2520 establishes civil liability for defendants who intercept, disclose or intentionally use wire, oral or electronic communications in violation of "this chapter;" i.e., chapter 119 of title 18.

Stated another way, § 2520 first defines the victims who can seek civil redress, then defines the class of defendants who can be found liable, and finally sets forth the wrongful conduct for which the defendant can be found liable. Thus, Cignarella, who has allegedly possessed and used a pirate access device to view DIRECTV's programming, can only be civilly liable for the interception, disclosure or intentional use of the underlying DIRECTV signal, and not for the mere possession of a pirate access device as prohibited by § 2512.

Recently, the Eleventh Circuit rejected the notion that § 2520 provides for civil liability for a violation of § 2512(1)(b). DIRECTV v. Treworgy, 373 F.3d 1124 (11th Cir. 2004).[9] In that case, like the instant case, the defendant moved to dismiss the count alleging a violation of § 2512(1)(b) for failure to state a claim. The district court had granted the motion, finding that the statute did not provide for a private cause of action. The Eleventh Circuit affirmed this decision concluding that "Congress did not create a private right of action against persons in possession of access devices in violation of section 2512(1)(b)." Id. at 1129. The Eleventh Circuit's reasoning follows that of this Court; that is, "that violation" refers only to "'the interception, disclosure, or intentional use of communications mentioned earlier in the sentence.'" Id. at 1127 (quoting DIRECTV, Inc. v. Bertram, 296 F.Supp. 2d 1021, 1024 (D.Minn. 2003)).

Defendant also relies on the Fourth Circuit's decision in Flowers v. Tandy Corp., 773 F.2d 585 (4th Cir. 1985) to support his view that § 2520(a) does not create a civil cause of action for a violation of § 2512. However, Flowers is distinguishable from the case at hand since the holding in Flowers was limited to manufacturers and sellers of wiretapping devices who were not involved in the underlying interception, disclosure or intentional use of an electronic communication.

Flowers involved a husband and wife who were involved in divorce proceedings. The

---

[9] Adopting the Eleventh Circuit's reasoning in Treworgy, Judge Hayden, in DIRECTV v. DeCroce, 332 F. Supp. 2d 715 (D.N.J. 2004), concluded that "[t]he phrase 'to recover from the person . . . which engaged in *that* violation,' [18 U.S.C. § 2520(a)] (emphasis added), demonstrates Congress's intent to limit civil liability under Section 2520(a) to the class of defendants who actually intercepted a communication, and not to extend liability for mere possession of pirate access devices." DeCroce, 332 F. Supp. 2d at 719.

husband purchased a telephone recording device from Tandy Corporation, which he used to record some of his wife's telephone conversations. In an action separate from the divorce proceedings, a jury awarded damages to the wife from Tandy, concluding that Tandy had aided and abetted the husband in his violation of § 2512 by selling him the wiretapping device. On appeal, the Fourth Circuit stated that "[t]he express language of § 2520 is therefore not susceptible to a construction which would provide a cause of action against one who manufactures or sells a device in violation of § 2512 but does not engage in conduct violative of § 2511." Flowers, 773 F.2d at 589.

The Fourth Circuit did not explicitly address the question of civil liability under § 2512 for one who also intercepted, disclosed or intentionally used an electronic communication, which is the situation here. That is, Cignarella allegedly violated both § 2511 and § 2512, unlike Tandy, which only allegedly violated § 2512.

Besides being factually distinguishable from the present case, Flowers was decided prior to the 1986 amendment to the ECPA. Several courts have held that these amendments broadened the scope of § 2512, thus rendering the Flowers ruling moot. See, e.g., Oceanic Cablevision v. M.D. Electronics, 771 F. Supp. 1019, 1028-1029 (D. Neb. 1991). As discussed below, this Court disagrees with those courts that have found that the 1986 amendments broadened the scope of the ECPA.

**2.      The Legislative History of The ECPA Shows Congress Intended for the Civil Liability to be Limited to Interception, Disclosure and Intentional Use**

As already explained, this Court reads § 2520(a) only to provide a civil remedy for interception, disclosure and intentional use of wire, oral or electronic communications.

However, given the vast number of cases agreeing with this Court, along with the equally vast number of cases reaching the opposite conclusion, it is apparent that the interpretation of § 2520(a) is far from a simple exercise in statutory analysis. Given the apparent lack of clarity in the statutory language, further consideration of Congress's intent is required. Mitchell v. Cellone, 389 F.3d 86, 89 (3d Cir. 2004) ("Our consideration of a statute must be in its entirety – we will not confine our interpretation to a single section, nor will we ignore the legislative scheme of which a particular provision is part where the working of a statute is not certain."). "In seeking to discern Congressional intent from the legislative text, a court must be mindful of the statute's object and policy and must read the disputed provision in the context of the entire statute and the provisions of related statutes." N.J. Transit Policemen's Benevolent Ass'n Local 304 v. N.J. Transit Corp., 806 F.2d 451, 452-3 (3d Cir. 1986).

Section 2520 was originally adopted as part of the Omnibus Crime Control and Safe Street Act of 1968, Public Law 90-351. That legislation included five titles, the third of which addressed wiretapping and electronic surveillance. S. REP. NO. 90-1097 at 2 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2113. While the main focus of Title III was on privacy concerns, as well as the criminal and federal law enforcement aspects of wiretapping and electronic surveillance, Congress included civil remedies for some violations of the new statute. In discussing the decision to include civil remedies, Congress stated:

> Virtually all concede that the use of wiretapping or electronic surveillance techniques by private unauthorized hands has little justification where communications are intercepted without the consent of one of the participants. No one quarrels with the proposition that the unauthorized use of these techniques by law enforcement agents should be prohibited. It is not enough, however, just to prohibit the unjustifiable interception, disclosure, or use of any wire or oral communications. An attack must also be made on the possession, distribution, manufacture, and advertising of intercepting devices. All too often the

> invasion of privacy itself will go unknown. Only by striking at all aspects of the problem can privacy be adequately protected. The prohibition, too, must be enforced with all appropriate sanctions. Criminal penalties have their part to play. But other remedies must be afforded the victim of an unlawful invasion of privacy. Provision must be made for civil recourse for damages. The perpetrator must be denied the fruits of his unlawful actions in civil and criminal proceedings. Each of these objectives is sought by the proposed legislation.

Id. at 45, *reprinted in* 1968 U.S.C.C.A.N. at 2156.

While this statement implies broad civil and criminal coverage, the Senate Report later clarified that the civil remedies are in fact limited. In summarizing the specific provisions of § 2520, the Senate Report stated:

> Section 2520 of the new chapter authorizes the recovery of civil damages. It provides that any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person, as defined in section 2510(6), discussed above, who intercepts, discloses or uses or procures any other person to intercept, disclose or use such communication. The scope of the remedy is intended to be both comprehensive and exclusive, but there is no intent to preempt parallel State law.

Id. at 85, *reprinted in* 1968 U.S.C.C.A.N. at 2196.

Ultimately, the original version of § 2520 provided, in relevant part, that

> Any person whose wire or oral communication is intercepted, disclosed or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person [damages and attorney's fees].

18 U.S.C. § 2520 (rewritten by Pub. L. No. 99-508, § 103 (1986)).

The Electronic Communication Privacy Act of 1986 amended Title III of the Omnibus Crime Control and Safe Street Act of 1968 "to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies."

S. REP. NO. 99-541 at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555. In summarizing the

provisions of the proposed legislation, the Congressional Research Service described the amendment to § 2520 as "[a]llow[ing] any person whose wire, oral, or electronic communication is intercepted, disclosed, or willfully used to bring a civil action to recover damages. (Present law allows such a civil action only for the interception or use of wire or oral communications.)" Summary of H.R. 4952 as of 10/1/1986. The Senate Report further emphasized that the proposed legislation would amend § 2520 "to incorporate violations involving interception, disclosure or intentional use of wire, oral, or electronic communications." S. REP. NO. 99-541 at 26, *reprinted in* 1986 U.S.C.C.A.N. at 3580. Essentially, the only substantive changes to § 2520 made by the 1986 amendment addressed technological changes; i.e., the inclusion of electronic communications.

      The only violations included in the pre-1986 version of the statute were interception, disclosure and use. In amending § 2520, Congress did not explicitly express any intention to broaden the range of violations for which defendants could be held civilly liable. For clarity in the amended version of § 2520(a), Congress included a specific exemption for § 2511(2)(a)(ii) since § 2511(2)(a)(ii) addressed one form of interception – interception by persons authorized to do so by law.

      DIRECTV argues that "[i]t strains credulity to believe that Congress intended for DIRECTV to be able to sustain a civil cause of action against those who actually use pirate access devices, but have no recourse under §2520 to stop anyone in the chain of distribution – those identified in §2512(1)(b) – those who manufacture, sell and possess such devices knowing that their primary function is to intercept DIRECTV's signals. Such a reading of the statute would lead to a never-ending exercise in futility and is contrary to the entire purpose of creating a

private cause of action in the first place because DIRECTV would never be able to shut down the piracy network." (Br. in Opp'n to Def.'s Mot. to Dismiss Count III of the Compl. at 5-6 (emphasis in original).)

Before the Eleventh Circuit, DIRECTV raised a similar argument. In Treworgy, DIRECTV argued that "the existence of a private right of action for violations of section 2512(1)(b) would better effectuate the purpose of the Wiretap Act . . . by encourag[ing] private attorneys general to aid in the enforcement of federal law." Treworgy, 373 F.3d at 1128. The Eleventh Circuit concluded that "[b]ecause the language of section 2520(a) does not create a private right of action against a person who possesses a device in violation of section 2512(1)(b), we cannot create one." Id. At 1129. This Court agrees with the Eleventh Circuit "that 'courts may not create [a private right of action], no matter how desirable that might be as a policy matter, or how compatible with the statute,' because that is a determination Congress alone can make." Id. (quoting Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001)).

Although DIRECTV may believe that pursuing civil remedies for any violation of chapter 119 may be beneficial to the overall enforcement scheme, Congress did not choose to do so, and this Court shall not tread where Congress has not. The main purpose behind the statute was creating criminal, not civil, remedies. There is no evidence in the legislative history indicating that Congress intended to extend civil liability to every section of chapter 119. Rather, the legislative history indicates Congress only intended to create a private cause of action for violations involving the interception, disclosure or intentional use of wire, oral, or electronic communications.

Additionally, Defendant argues that if Congress intended to exempt § 2512(1)(b) from the

13

provisions of § 2520(a), it could have included it with the other sections of chapter 119 that are specifically exempted from coverage of § 2520(a).  (Br. in Opp'n to Def.'s Mot. to Dismiss Count III of the Compl. at 5.)  Congress specifically exempted § 2511(2)(a)(ii)[10] from civil liability, but did not exempt § 2512(1)(b).  However, as previously mentioned, § 2511(2)(a)(ii) involves interception by persons authorized by law to intercept wire, oral or electronic communications, while § 2512(1)(b) involves the manufacture, assembly, possession and sale of pirate access devices, a completely different type of violation.  Since Congress only created a private cause of action for violations involving interception, disclosure or intentional use of wire, oral, or electronic communications, Congress only needed to address exceptions to this set of violations, and not all other types of violations created by the criminal statute.

Essentially, no specific exclusion is required for § 2512(1)(b) since that section was never included as one of the violations for which a private cause of action existed. See, e.g., Andrus v. Glover Const. Co., 446 U.S. 608, 616-17 (1980) (holding that "[w]here Congress explicitly

---

[10] § 2511(2)(a)(ii) provides in relevant part that

> Notwithstanding any other law, providers of wire or electronic communication service, their officers, employees, and agents, landlords, custodians, or other persons, are authorized to provide information, facilities, or technical assistance to persons authorized by law to intercept wire, oral, or electronic communications or to conduct electronic surveillance . . . [pursuant to a court order or appropriate certification] . . . No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, or agents, landlord, custodian, or other specified person for providing information, facilities, or assistance in accordance with the terms of a court order, statutory authorization, or certification under this chapter.

14

enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent"); <u>United States v. Johnson</u>, 529 U.S. 53, 58 (2000) (holding that "[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others.  The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth").

Therefore, this Court concludes that Congress, in adopting and amending this law, created civil remedies for only those violations it wished –  interception, disclosure, or intentional use – as well as the limited exception set forth in § 2511(2)(a)(ii).  If Congress had wanted to expand or narrow the scope of civil remedies further, it could have done so.  As a result, not only does the plain language of the statute demonstrate that no civil liability exists for a violation of § 2512, but the legislative history also supports this conclusion.

**Conclusion**

Since § 2520 does not extend civil liability to violations of § 2511(2)(a)(ii), regardless of the facts underlying the complaint, Plaintiff is unable to state a claim upon which relief can be granted.  Therefore, Defendant's motion to dismiss Plaintiff's third count, pursuant to Fed. R. Civ. P. 12(b)(6), is granted.


    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J

Dated: May 23, 2005